UNITED STATES *v.* CUTTING.

Under the Internal Revenue Act of June 30, 1864, as amended by the act of March 3, 1865, the sales of stocks, bonds, and securities made by "*brokers*" for themselves are subject to the same duties as those made by them for others.

THE Internal Revenue Act of 30th June, 1864,* declares by its 99th section as follows:

" All *brokers* and bankers doing business as brokers, shall be subject to pay the following duties and rates of duty upon the sales of merchandise, produce, gold and silver bullion, foreign exchange, promissory notes, stocks, bonds, or other securities, &c., and shall also be subject to all the provisions, &c., of the act for making returns, assessments, and collection of the duties."

The ninth paragraph of the 79th section says:

" Brokers shall pay $50 for each license.  Every person, firm, or company (except such as hold a license as banker),

---

* 13 Stat. at Large, 218.

whose business it is as a broker to NEGOTIATE purchases or sales of stocks, exchange, bullion, coined money, bank notes, promissory notes, or *other securities*, shall be regarded as a broker, [and shall make oath or affirmation that all their transactions are made for a commission."]

On the 3d March, 1865, Congress passed an act to amend the former act.*   This last act amends the former, by inserting, after the words "*other securities*" (given above in italics) the words "*for themselves* or others;" and by striking out from the paragraph that part of it included above in brackets.

In this state of the statutes, as assumed by the court, Cutting & Co., duly licensed as "*brokers*," besides having bought and sold stocks, bonds, and securities *for others*, had sold on their *own account other stocks, bonds, and securities, of which they were themselves the owners at the time.* On these last they refused to pay any duty; and suit being brought by the United States to recover the duty, the question here, on error to the New York Circuit, was, whether they had refused rightfully; in other words, whether one licensed as a "broker" only, was liable to pay duty on his own stocks sold on his own account. The Circuit Court thought that he was not.

The case, which largely concerned, of course, both the government and great numbers of persons in all our large cities, was thoroughly and ably argued by *Mr. Speed, A. G., for the United States, and by Messrs. Allen, Burrill, and Evarts, contra.* The matter involving, however, nothing but the construction of a statute of immense length hastily drawn of necessity in many of its provisions, and liable to be amended indefinitely, even the ability which marked the discussion would not compensate the general reader for the space which any presentation of it would require.

Mr. Justice GRIER delivered the opinion of the court.

The act of 30th June, 1864, is entitled "An act to provide

---

* 13 Stat. at Large, 469.

ways and means for the support of government and for other purposes." It imposes specific taxes upon a large list of articles manufactured or sold, and prescribes the mode of assessing and collecting them. In addition to these, it imposes certain taxes on all persons carrying on certain "trades or professions" enumerated. The persons on whom this tax is assessed receive what is called a " license," which is the evidence of permission to exercise such trade or calling in consequence of payment of this tax or duty. Among these is the trade or employment of broker, mentioned in the ninth paragraph of the 79th section of the act. Brokers are required to pay fifty dollars for a license. The act also defines the term broker to " be one whose business it is to negotiate purchases or sales of stocks, exchange, coined money, bank notes, promissory notes, or other securities." Other species of the genus broker are indicated by the affix to the general term, as well as by special definition, such as " pawn brokers," " cattle brokers," &c., &c. Besides, the tax paid by auctioneers and the different species of brokers under form of a license or permission " to prosecute their trade, business, or profession," they were required to pay certain duties on the sales made by them respectively.

Being by means of these licenses brought within the cognizance of the revenue officers, and into a quasi-official relation with them, they were required to make " returns, assessment, and collection of these duties," under certain penalties. By the 99th section " all brokers, and bankers doing business as brokers, shall be subject to pay the following duties and rates of duty upon the sales of merchandise, produce, gold and silver bullion, foreign exchange, promissory notes, stocks, bonds, or other securities, &c., and shall also be subject to all the provisions of the act for making returns, assessments, and collection of the duties."

Now, the 9th paragraph of the 79th section, after defining a broker to be one " whose business it is, as a broker, to negotiate purchases or sales," &c., required him also to make oath " that all his transactions are made for a commission." This clause might have been construed to forbid a licensed

broker to purchase or sell stocks, &c., on his own account, so that his sales being made through the interposition of another broker, might be made liable to tax. But it has been construed to release him from the necessity of making any return of sales made for himself, or from paying any tax on such sales.

But there was no good reason why these transactions in stocks, bullion, &c., by a broker, for his own profit, should not be liable to the same tax or duty imposed on those made by him for other parties. Besides, such construction gave great opportunities of evading the tax altogether. To obviate this difficulty, an act was passed on 3d of March, 1865, to amend the act of 30th June, 1864. Among other things it amends the ninth paragraph of section 79, by inserting after the words " other securities" the words "*for themselves or others*," and by striking out from said paragraph the words " and shall make oath or affirmation that all his transactions are made for a commission."

The intention of this amendment might have been better provided for by an amendment of the 99th section, but it cannot be doubted that the meaning of the act was to subject sales made by a broker for himself to the same tax as those made for others.

The definition of a broker will now read, in the section as amended, " whose business it is, as broker, to negotiate purchases or sales of stocks, exchange, bullion, coined money, bank notes, promissory notes, or other securities, *for themselves or others*."

That it was the intention of Congress to subject the sales made by brokers for themselves to the same duties as those made by them for others, cannot admit of a doubt, though it must be admitted their intention is rather obscurely expressed.

The judgment below is reversed and a

VENIRE DE NOVO AWARDED.